IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| SHEILA ELAINE TURNER, )<br>)<br>Plaintiff, )<br>)<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>    Commissioner of Social Security, )<br>)<br>Defendant. )<br>_____ ) | CIVIL NO. 3:11-cv-275-JAG |

## REPORT AND RECOMMENDATION

Sheila Elaine Turner ("Plaintiff") worked part-time as a home health care assistant in 2004. She alleges that she suffers from degenerative disc disease, diabetes mellitus, fibromyalgia,[1] and osteoarthritis.[2] On October 22, 2007, Plaintiff applied for Social Security Disability ("DIB") from January 5, 2003 through September 20, 2007 under the Social Security Act (the "Act"). Plaintiff's claim was presented to an administrative law judge ("ALJ"), who denied Plaintiff's request for DIB benefits. The Appeals Council subsequently denied Plaintiff's request for review on March 17, 2011. Plaintiff now challenges the ALJ's denial, asserting that the ALJ ignored the opinion of her treating physician who opined on her ability to conduct daily activities and her disability status.

---

[1] Fibromyalgia consists of "pain and stiffness in the muscles and joints that either is diffuse or has multiple trigger points." *Dorland's Illustrated Medical Dictionary* 703 (31st ed. 2007).

[2] Osteoarthritis is "a noninflammatory degenerative joint disease" that "is accompanied by pain, usually after prolonged activity, and stiffness." *Dorland's* at 1344.

In his opinion, the ALJ concluded that through September 20, 2007 — the date Plaintiff was last insured — Plaintiff had the residual functional capacity ("RFC") to perform a full range of sedentary work. (R. at 15.) The ALJ rejected Plaintiff's statements concerning the intensity and limiting effects of her maladies as not credible, because they were inconsistent with the RFC assessments. (R. at 16.) Plaintiff alleges the ALJ erred because his finding was contrary to and not supported by evidence presented in the record. (Pl.'s Mem. in Supp. of Mot. for Summ. J. ("Pl.'s Mem.") at 5.) More specifically, Plaintiff complains that the ALJ failed to analyze the opinion of Plaintiff's treating physician, Dr. George J. Mathews. (Pl.'s Mot. at 5.)

Plaintiff seeks judicial review of the ALJ's decision in this Court pursuant to 42 U.S.C. § 405(g). The parties have submitted cross-motions for summary judgment, which are now ripe for review.[3] Having reviewed the parties' submissions and the entire record in this case, the Court is now prepared to issue a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons that follow, it is the Court's recommendation that Plaintiff's motion for summary judgment and motion to remand (ECF No. 11) be GRANTED; that Defendant's motion for summary judgment (ECF No. 12) be DENIED; and that the final decision of the Commissioner be REVERSED AND REMANDED for consideration of the opinion of Plaintiff's treating physician.

---

[3] The administrative record in this case has been filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

## I. MEDICAL HISTORY

Plaintiff's chief complaint is that the ALJ discounted and failed to analyze the opinion of her treating physician, Dr. Mathews, who had evaluated Plaintiff during and after her claimed disability period. (Pl.'s Resp. to Def.'s Mot. for Summ. J. ("Pl.'s Resp.") at 3.) Plaintiff further complains that "significant weight" was placed on experts, who had never examined nor treated her. (Pl.'s Resp. at 3.) As the question before the Court is whether the ALJ reviewed and weighed the opinion and treating notes of Dr. Mathews, his records have particular relevance.[4]

### A. The Treating Physician — Dr. Mathews

Dr. Mathews began treating Plaintiff on August 3, 2006, when she was 47 years old. (R. at 122; *see* R. at 221.) He noted that Plaintiff complained of "moderately severe constant pain" in her low back that appeared spontaneously, and that Plaintiff had a history of fibromyalgia. (R. at 220.) He assessed that Plaintiff's L4-L5[5] was tender and had a reduced range of motion, but that her tendon reflexes were normal. (R. at 220.) Dr. Mathews' impression of Plaintiff's medical ailments included "painful disc degeneration/herniation," failed surgery, chronic pain, and fibromyalgia. (R. at 220.) Although Dr. Mathews discussed the option of surgery, Plaintiff requested a pain management system. With regard to Plaintiff's fibromyalgia and disc pain, Dr. Mathews wrote in his patient notes: "Poor prognosis. Will need long term pain management." (R. at 220.)

---

[4] Of course, other physicians also treated Plaintiff, such as Dr. James E. Burton, who interpreted Plaintiff's MRI on June 2, 2005, and determined that her degenerative disc disease was "unchanged" (*see* R. at 338-39). However, the issue before the Court is whether the ALJ reviewed and weighed the opinion evidence from Plaintiff's treating physician, Dr. Mathews.

[5] L4 and L5 are one of the five symbols for the "five vertebrae between the thoracic vertebrae and the sacrum." *Dorland's* at 2051.

3

An August 15, 2006 MRI of Plaintiff's spine revealed that Plaintiff's L5 had transitional vertebral body and the existence of degenerative disc disease in the low thoracic spine. (R. at 222.) Plaintiff's pain medication was increased on October 19, 2006. (R. at 218.) A month later, on November 16, 2006, Dr. Mathews noted that Plaintiff has "diff. [with] ADL,"[6] but that she was stable with pain management, although still in pain. (R. at 217.) While he noted that Plaintiff's fibromyalgia was under control on March 10, 2007, Dr. Mathews indicated an increase of pain on June 2, 2007 and December 15, 2007. (R. at 217.)

While he was treating her, Dr. George J. Mathews referred Plaintiff to Dr. Shoba Mathews and, on April 26, 2007, Plaintiff had an electromyogram ("EMG").[7] Dr. Shoba Mathews found "neuropathic changes in the lower lumbosacral myotomes at multiple levels from L4 to S1, [] with evidence of acute denervation in the L4 and L5 posterior rami" along with an "L4 root irritation bilaterally." (R. at 221.)

On June 12, 2009, after Plaintiff filed her DIB claim, Dr. Mathews completed a medical assessment of Plaintiff's ability to engage in work-related physical activities, which was similar to SSA Form No. 0960-0662. (*See* R. at 119.) In the form, Dr. Mathews indicated that Plaintiff's lifting and carrying of objects was affected by her impairment, and that she could only carry or lift a maximum of five pounds. (R. at 119.) Continuing, he indicated that Plaintiff's standing, sitting, and walking was affected by her pain, and that she could only do either for a maximum of two hours during an eight-hour day. (R. at 120.) He also noted that Plaintiff could never climb, balance, stoop, crouch, kneel, or crawl. (R. at 120.) Dr. Mathews indicated that Plaintiff's ability to push and pull was affected by her pain, as was her ability to be in high places

---

[6] ADL is an acronym for "activities of daily living." *Dorland's* at 32.

[7] As they both have the same surname, the Court will address Dr. Shoba Mathews as Dr. Shoba Mathews and Dr. George J. Mathews as Dr. Mathews.

4

or moving machinery. (R. at 121.) Finally, Dr. Mathews gave his opinion that Plaintiff was "totally permanently disabled." (R. at 121.) In an attached memo regarding Plaintiff's onset date of disability, Dr. Mathews listed Plaintiff's conditions as a tender lumbar spine with failed back syndrome and a decreased range of motion that began on August 3, 2006. (R. at 122.)

B.  **The Nontreating State Agency Physicians**

On January 25, 2008, the Disability Determination Services, a division of the Virginia Department of Rehabilitative Services ("DDS"), referred Plaintiff's claim to Robert Chaplin, M.D. ("Dr. Chaplin"), a specialist in internal medicine, to determine whether "the available evidence is insufficient to determine the [Plaintiff's] functional limitations prior to" September 30, 2007. (R. at 502.) Dr. Chaplin never treated or met with Plaintiff before opining on her physical abilities. (*See* R. at 16.) Dr. Chaplin noted on January 29, 2008, that the "the information [provided in the record] is scant in reporting [Plaintiff's] limitations" to make a decision, but then determined that Plaintiff had an "ability to perform at a sedentary level." (R. at 503.)

A few months later, on April 29, 2008, Plaintiff's claim was again referred to a specialist in internal medicine by DDS to affirm that "[t]he medical records do not show a severe impairment." (R. at 524.) After reviewing the evidence but having never met the Plaintiff, James Wickham, M.D., agreed with Dr. Chaplin's assessment, because "[t]here is insufficient evidence to establish presence of a disabling condition prior to" September 30, 2007. (R. at 525, 16.)

## II. PROCEDURAL HISTORY

Plaintiff protectively filed for DIB on October 22, 2007, claiming disability due to degenerative disc disease, diabetes mellitus, fibromyalgia, and osteoarthritis with an alleged

onset date of January 5, 2003. (R. at 101, 134.) Her date last insured is September 30, 2007. (R. at 130.) The Social Security Administration ("SSA") denied Plaintiff's claims initially and on reconsideration.[8] (R. at 11.) On July 8, 2009, Plaintiff testified before an ALJ. (R. at 11.) On September 2, 2009, the ALJ issued a decision finding that Plaintiff was not under a disability at any time from January 5, 2003 through September 30, 2007. (R. at 18.) The Appeals Council subsequently denied Plaintiff's request to review the ALJ's decision on March 17, 2011, making the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court. (*See* R. at 1-5.)

### III. QUESTIONS PRESENTED

Did the Commissioner fail to analyze the opinion of Plaintiff's treating physician and, if so, was his subsequent decision supported by substantial evidence on the record and the application of the correct legal standard?

### IV. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court is limited to determining whether the Commissioner's decision was supported by substantial evidence on the record and whether the proper legal standards were applied in evaluating the evidence. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. Jan. 5, 2012) (citing *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)). Substantial evidence is more than a scintilla, less than a preponderance, and is the kind of relevant evidence a reasonable mind could accept as adequate to support a

---

[8] Initial and reconsideration reviews in Virginia are performed by an agency of the state government — the Disability Determination Services ("DDS"), a division of the Virginia Department of Rehabilitative Services — under arrangement with the SSA. 20 C.F.R. pt. 404, subpt. Q; *see also* § 404.1503. Hearings before administrative law judges and subsequent proceedings are conducted by personnel of the federal SSA.

conclusion. *Id.* (citations omitted); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

To find whether substantial evidence exists, the Court is required to examine the record as a whole, but it may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (citation omitted) (internal quotation marks omitted); *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589). In considering the decision of the Commissioner based on the record as a whole, the Court must "take into account whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951) (internal quotation marks omitted)). The Commissioner's findings as to any fact, if the findings are supported by substantial evidence, are conclusive and must be affirmed. *Hancock*, 667 F.3d at 476 (citation omitted). While the standard is high, if the ALJ's determination is not supported by substantial evidence on the record, or if the ALJ has made an error of law, the district court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required to determine if a claimant is eligible for benefits. 20 C.F.R. §§ 416.920, 404.1520; *Mastro*, 270 F.3d at 177. The analysis is conducted for the Commissioner by the ALJ, and it is that process that a court must examine on appeal to determine whether the correct legal standards were applied and whether the resulting decision of the Commissioner is supported by substantial evidence on the record. *See Mastro*, 270 F.3d at 176-77.

The first step in the sequence is to determine whether the claimant was working at the time of the application and, if so, whether the work constituted "substantial gainful activity"

7

("SGA").[9] 20 C.F.R. §§ 416.920(b), 404.1520(b). If a claimant's work constitutes SGA, the analysis ends and the claimant must be found "not disabled," regardless of any medical condition. *Id.* If the claimant establishes that she did not engage in SGA, the second step of the analysis requires her to prove that she has "a severe impairment . . . or combination of impairments which significantly limit[s] [her] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); *see also* 20 C.F.R. § 404.1520(c). To qualify as a severe impairment that entitles one to benefits under the Act, it must cause more than a minimal effect on one's ability to function. 20 C.F.R. § 404.1520(c).

At the third step, if the claimant has an impairment that meets or equals an impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1 (listing of impairments) and lasts, or is expected to last, for twelve months or result in death, it constitutes a qualifying impairment and the analysis ends. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the impairment does not meet or equal a listed impairment, then the evaluation proceeds to the fourth step in which the ALJ is required to determine whether the claimant can return to her past relevant work[10] based on an assessment of the claimant's residual functional capacity ("RFC")[11] and the "physical and mental demands of

---

[9] SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c).

[10] Past relevant work is defined as SGA in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 416.965(a), 404.1565(a).

[11] RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work

8

work [the claimant] has done in the past." 20 C.F.R. §§ 416.920(e), 404.1520(e). If such work can be performed, then benefits will not be awarded. *Id.* The burden of proof remains with the claimant through step four of the analysis, such that he must prove that his limitations preclude her from performing his past relevant work. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Hancock*, 667 F.3d at 472 (citation omitted).

However, if the claimant cannot perform her past work, the burden then shifts to the Commissioner at the fifth step to show that, considering the claimant's age, education, work experience and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f); *Powers v. Apfel*, 207 F.3d 431, 436 (7th Cir. 2000) (citing *Bowen*, 482 U.S. at 146 n.5). The Commissioner can carry his burden in the final step with the testimony of a vocational expert ("VE"). When a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence on record and a fair description of all of the claimant's impairments, so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform. *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). Only when the hypothetical posed represents *all* of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful." *Id.* If the ALJ finds that the claimant is not capable of SGA, then the claimant is found to be disabled and is accordingly entitled to benefits. 20 C.F.R. §§ 416.920(f)(1), 404.1520(f)(1).

---

schedule." SSR-96-8p. When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (*i.e.*, 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. *Id.* (footnote omitted).

## V. ANALYSIS

The ALJ found at step one that Plaintiff last met the insured status requirements of the Act on September 30, 2007, and that she did not engage in substantial gainful activity from January 5, 2003 through September 30, 2007. (R. at 13.) At step two, the ALJ determined that Plaintiff was severely impaired from degenerative disc disease, diabetes mellitus, and obesity. (R. at 13-14.) Continuing, the ALJ noted that there was "no specific diagnosis of fibromyalgia given by any of [Plaintiff's] treating physicians." (R. at 13.) Further, he discussed Plaintiff's ability to take care of herself and interact with people, and her mild difficulties with concentration, persistence, or pace. (R. at 14.)

At step three, the ALJ concluded that Plaintiff's medical problems did not meet one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. (R. at 14.) Continuing, the ALJ determined that there was no evidence of root compression associated with Plaintiff's degenerative disc disease and obesity, and that Plaintiff's diabetes mellitus does not reflect additional impairments. (R. at 14.) At step four, and after "careful consideration of the entire record," the ALJ found that Plaintiff had the residual functional capacity to perform the full range of sedentary work as defined in 20 C.F.R. 404.1567(a). (R. at 15.) The ALJ noted Plaintiff's MRI readings, chronic pain syndrome diagnosis, and Plaintiff's testimony about her limited ability to stand, sit, walk, and bend. (R. at 15-16.) The ALJ also noted an electromyogram (EMG) performed by Dr. Shoba Mathews. (R. at 15.) Although the ALJ determined that there was objective evidence of degenerative disc disease, diabetes mellitus, and obesity, he concluded that Plaintiff's statements concerning the intensity, persistence and limiting effects of her diagnoses were not credible "to the extent they are inconsistent with the RFC assessment." (R. at 16.) Instead, the ALJ gave state agency medical consultants who had

never examined Plaintiff "significant weight," because their opinions that Plaintiff had a RFC for sedentary work were consistent with treating examiners. (R. at 16-17.)

At step five, the ALJ determined Plaintiff could not perform any past relevant work. (R. at 17.) However, based on her age on the date she was last insured (48), ability to communicate in English, high school education, and RFC, the ALJ determined that there were jobs in significant numbers in the national economy that Plaintiff could have performed, because Plaintiff was not under a disability between January 5, 2003 and September 20, 2007. (R. at 17-18.)

The issue raised in this appeal is, quite simply, whether the ALJ failed to analyze and assign weight to the opinion of Dr. Mathews, Plaintiff's treating physician. (Pl.'s Mem. at 5; Pl.'s Resp. at 3.) In support of her position, Plaintiff first notes that the ALJ did not mention Dr. Mathew's opinion about Plaintiff's ability to perform work related activities. (Pl.'s Mem. at 5.) Plaintiff argues the ALJ's failure to reference Dr. Matthew's opinion is contrary to the Fourth Circuit's opinion in *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984), where the Court noted that it "cannot determine if findings are unsupported by substantial evidence unless [the fact finder] explicitly indicates the weight he has given to all of the relevant evidence." (Pl.'s Mem. at 5.) As Dr. Mathews was a treating physician who gave his opinion on Plaintiff's medical conditions, Plaintiff argues that his opinion should be given controlling weight, because it was well-supported by medically acceptable diagnostic techniques and was not inconsistent with other substantial evidence in the record. (Pl.'s Mem. at 7-8.) Plaintiff requests a reversal or a remand of the ALJ's decision. (Pl.'s Mem. at 8.)

In contrast, Defendant argues the ALJ properly weighed Dr. Mathews' opinion, because the opinion was provided after the date of Plaintiff's last insurance, was not corroborated by the

11

evidence, and failed to provide support for his conclusion. (Def.'s Mem. at 10-11.) Further, Defendant explains that Dr. Mathews' opinion was considered by the ALJ, because the ALJ noted "treating examiners," rejected the evidence not cited, specifically noted Dr. Shoba Mathews' notes, and heard Plaintiff's discussion of Dr. Mathews' assessment at the hearing. (Def.'s Mem. at 14-15.)

During the sequential analysis, when the ALJ determines whether the claimant has a medically-determinable severe impairment, or combination of impairments which would significantly limit the claimant's physical or mental ability to do basic work activities, the ALJ must analyze the claimant's medical records that are provided and any medical evidence resulting from consultative examinations or medical expert evaluation that have been ordered. *See* 20 C.F.R. § 416.912(f). When the record contains a number of different medical opinions, including those from the Plaintiff's treating physicians, consultative examiners or other sources that are consistent with each other, then the ALJ makes a determination based on that evidence. *See* 20 C.F.R. § 416.927(c)(2). If, however, the medical opinions are inconsistent internally with each other, or other evidence, the ALJ must evaluate the opinions and assign them respective weight to properly analyze the evidence involved. 20 C.F.R. § 416.927(c)(2), (d).

Under the applicable regulations and case law, a treating physician's opinion must be given controlling weight if: (1) it is well-supported by medically-acceptable clinical and laboratory diagnostic techniques; and, (2) is not inconsistent with other substantial evidence in the record. *Craig*, 76 F.3d at 590; 20 C.F.R. § 416.927(d)(2); SSR 96-2p. However, the regulations do not require that the ALJ accept opinions from a treating physician in every situation, *e.g.*, when the physician opines on the issue of whether the claimant is disabled for purposes of employment (an issue reserved for the Commissioner), or when the physician's

opinion is inconsistent with other evidence, or when it is not otherwise well supported. *Jarrells v. Barnhart*, No. 7:04-CV-00411, 2005 WL 1000255, at *4 (W.D. Va. Apr. 26, 2005); *see also* 20 C.F.R. § 404.1527(d)(3)-(4), (e).

In detailing the ALJ's error, Plaintiff relies on *Gordon v. Schweiker*, 725 F.2d at 236, where the Fourth Circuit remanded a case denying DIB benefits, because the ALJ did not indicate "the weight given to the various medical reports submitted" by the claimant. According to the Fourth Circuit, a court "cannot determine if findings are unsupported by substantial evidence unless the Secretary explicitly indicates the weight given to all of the relevant evidence." *Id.* at 235.

Defendant, on the other hand, argues that a treating physician's opinion given retrospectively requires corroborated evidence from the relevant time period. (Def.'s Mem. at 10.) Defendant cites to *Estok v. Apfel*, 153 F.3d 636 (7th Cir. 1998), to emphasize the lack of credibility of a retrospective physician's opinion. *Estok* is distinguishable from the case before the Court, however, because the physician in *Estok* had examined and opined about the claimant's medical condition *after* the claimant's date last insured. *See* 153 F.3d at 639.[12] In this instant, Plaintiff's treating physician during the relevant time period rendered an opinion of her medical condition from the date of her first visit with Dr. Mathews (August 3, 2006) through the date of the opinion (June 12, 2009). (*See* R. at 122.) Thus, Dr. Mathews' opinion, written retrospectively, was based on his treatment notes and own personal knowledge of Plaintiff's health during the relevant time period. Although both the state experts and Dr. Mathews gave

---

[12] Another case cited by Defendant, *Flint v. Sullivan*, 951 F.2d 264, 267 (10th Cir. 1991), similarly involves a claimant whose medical condition was diagnosed by a physician who treated and diagnosed him *after* the relevant time period. That case is therefore also distinguishable.

opinions of Plaintiff's physical abilities after the relevant time period, *only* Dr. Mathews examined Plaintiff during the time period for which she seeks DIB benefits.

Next, Defendant argues that Dr. Mathew's opinion is not supported by the evidence in the record. (Def.'s Mot. 11-12.) While Defendant extensively recites all facts on the record that do not corroborate Dr. Mathews' opinion (Def.'s Mem. at 10-15), Defendant ignores the treatment notes from Dr. Mathews that would corroborate his own opinion. For example, Dr. Mathews indicated that, while her pain was under control, Plaintiff still had difficulties with her activities of daily living. (R. at 217.) Similarly, while Dr. Mathews regularly notes that Plaintiff's pain is under control, he also notes Plaintiff's constant pain and "poor prognosis." (R. at 217, 220.)

Regardless, it is not this Court's place to determine whether Dr. Mathews' opinion is credible or whether the opinion should hold any weight at all; the Court must only determine whether the opinion was given *any* weight by the ALJ. In doing so, the Court cannot inflate the ALJ's decision and determine, in hindsight and based on Defendant's logic, what weight Dr. Mathews' opinion should hold. Nor can the Court hold that Dr. Mathews' opinion is not accurate — that is a decision for the fact finder. The Court's role here is solely to evaluate the ALJ's decision and to determine whether the ALJ evaluated the evidence before him, as required under the Act. *See Robinson v. Barnhart*, 366 F.3d 1078, 1084-85 (10th Cir. 2004).

In this respect, the Court believes that the ALJ committed reversible error by not assigning a weight to Dr. Mathews' opinion.[13] While the ALJ heavily summarizes the opinions

---

[13] Defendant cites to *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 202 n.1 (3d Cir. 2008), and *Rutherford v. Barnhard*, 399 F.3d 546, 552-53 (3d Cir. 2005), to bolster his position that a refusal to recite evidence does not demonstrate the failure of considering such evidence. (Def.'s Mem. at 14.) The issue presented in both cases, however, was not a total absence of a mention of the opinion and notes of a treating physical, but rather a lack of recitation of the physician notes verbatim. As shown above, Dr. Mathews' opinions and notes are nowhere to be seen within the ALJ's decision.

of the state experts and assigns them "significant weight" because their opinions were consistent with "treating examiners," not once did he mention Dr. Mathews' opinion. Instead, he summarizes Plaintiff's testimony of her abilities.[14] Thus, the ALJ failed to assign a weight to opinion evidence of Plaintiff's treating physician.

Finally, while the ALJ must generally give more weight to a treating physician's opinion, "circuit precedent does not require that a treating physician's testimony 'be given controlling weight.'" *Craig*, 76 F.3d at 590 (quoting *Hunter v. Sullivan*, 993, F.2d 31, 35 (4th Cir. 1992)). Since its decision in *Hunter*, the Fourth Circuit has consistently held that, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Mastro*, 270 F.3d at 178 (citing *Craig*, 76 F.3d at 590); *see also* 20 C.F.R. § 416.927(d)(2). Again, the issue here is not the weight that the ALJ gave to Dr. Mathews' opinion, or whether Dr. Mathews' opinion was accorded significantly less weight. The simple fact that the ALJ failed to mention Dr. Mathews' opinion *at all* inhibits the Court's analysis of whether the ALJ's decision is supported by substantial evidence. *See Gordon*, 725 F.2d at 235. As a result, the Court recommends a reversal of the ALJ's decision and remand of the case for consideration of the opinion of Plaintiff's treating physician, Dr. Mathews.

## VI. CONCLUSION

Based on the foregoing analysis, it is the recommendation of this Court that Plaintiff's motion for summary judgment and motion to remand (ECF No. 11) be GRANTED; that

---

[14] More striking, however, the ALJ unequivocally writes that "no specific diagnosis of fibromyalgia [was] given by any of [Plaintiff's] treating physicians." Had the ALJ analyzed Dr. Mathews' opinion and treatment notes, he would have noted that Dr. Mathews' discussed Plaintiff's fibromyalgia on the date he began treated her and noted a "poor prognosis" with regard of her fibromyalgia and disc pain.

15

Defendant's motion for summary judgment (ECF No. 12) be DENIED; and, that the final decision of the Commissioner be REVERSED AND REMANDED for the consideration of the opinion evidence of Plaintiff's treating physician, Dr. George J. Mathews.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable John A. Gibney and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

                                                /s/
                                        David J. Novak
                                        United States Magistrate Judge

Richmond, Virginia
Dated: May 11, 2012